Good morning, Your Honors. Knute Johnson for the defendant, Appellant Alexandro Necochea-Varela. There's two issues here. The first I'd like to touch briefly, which is the vindictiveness, and I'm going to save a couple minutes for rebuttal if I can. As to the vindictiveness, what I want to point out is that the government, the prosecution, knew well before September about these prior events that they then claimed to have learned about and honor about September 25th. The 2011 prior events were all listed in the pre-sentence report for Mr. Necochea-Varela from 2012 from an unrelated conviction. They were in the pretrial services report available in the courtroom, and the discovery provided by the government showed a dated and stamped computer printout showing that on March 16th at 3 a.m. an arrest by DHS by the agent who arrested him, which is all clear from the record. But what I'd really like to focus in on is the March 27th statement. The government agrees that they argued that as a confession and rebuttal. They claim that the prosecution argued all along they were going to try to introduce it as a confession, and that's simply not true. And they point out to the supplemental excerpts of record, which was a motion in limine filed by the government when the case looked even different than it did at trial, because you remember that government went through several iterations of charging Mr. Necochea-Varela and then adding a bunch of charges and then dismissing charges and then dismissing more charges, including those. Well, they offered him a good deal, right? They did, Your Honor. Did they turn it away? Well, you know, whether it was a good deal or not, the jury did not convict him of that count on which he was offered a deal. The jury hung and it was dismissed. He was only convicted of these other counts that came up later. And as to the March 27th statement that the government used... I don't know. Yeah, that's true, what you say. But here he was. They offered to take a plea. I'm trying to remember if they... what the final disposition would be. And he's got to know, and his lawyers got to know, that he's getting a very good deal on this. You know, he's got... how many convictions has he got? 24? It's almost... So, you know, maybe down where he pled, they've just got so many of these that they lose track of him. I understand that, Your Honor, but I also understand that he was not convicted of that count that he refused to plead to. And as to the evidence used to convict him of the 2012 count, the government's introduction of what, in rebuttal, was clearly argued as a confession... But it was a confession. I mean, why wasn't it a confession? Because he admitted to being involved in smuggling 10 days before. Maybe he was two days off, and maybe loosely he was referring to the earlier arrest. Or he may have been referring to the general period within two days. This is not like your typical 404B case, where the evidence is of an entirely different transaction, an entirely different crime used for the purposes of trying to show propensity or something else. This was to show that he confessed at the time of that March incident. At least the jury could have used it in that fashion. But that's certainly not what it was admitted for. And then the lengthy elimination... How do we know what it was admitted for? Because the judge never said 404B. The record is a little bit ambiguous about that. I disagree respectfully, Your Honor. The court went over and over on the issue. And if I can reference some points in the transcript. And remember, there was no conspiracy charge. There had been a conspiracy charge. If there had been a conspiracy charge, this could have been an admission to participating in that conspiracy. But it was a different vehicle, on a different day, with someone who wasn't... But you don't need a conspiracy charge, because even if he was only charged with that one incident that day, this goes directly to whether or not he confessed that he was involved in smuggling and not some other... He wasn't driving for Uber or Lyft or anything else that day. But it wasn't as to the same day. And then that becomes a propensity argument. The court gave the prosecution one last chance at transparency by saying, okay, so 404B evidence, there's nothing else to say on that, right? And the government said, right. The government's moving their in limine papers did not describe it as a direct admission, as a confession of guilt. That would have been treated very differently. The district court ruled... It said the court overrules the 404B objection. The court went through a very detailed prejudice analysis and wanted to delete parts of the statement. If this had been admitted as a confession, the prejudice is in the statement. There is no prejudicial, overly prejudicial analysis to do on a confession. But there is, there has to be under 404B. If we say you're right and it were admitted under, only under 404B and not a confession, it would have gone to his state of mind, his knowledge, which was the crucial issue with regard to the arrest that we're talking about. I mean, there were no other elements of dispute. He did transport. The person was not documented, et cetera, et cetera. So the only issue upon which the 404B, if that's what applies here, went to was knowledge, and it's hard to understand how there's prejudice if even under 404B would have gone to the critical, one disputed fact, the only disputed fact. It was pretty damning either way. It's like the Hernandez case, which I cited in the 28J letter. In that case, the government used 404B to prove an element of the offense. In this case, if that came in only under 404B, and that's our argument, and the government argued he admitted to this offense, that is devastating evidence that would show his knowledge. The fact that he may have had knowledge on another occasion and the government can argue that, well, he should have known here because he was involved in another time, is a completely different argument. Well, even under your construction, he admitted knowledge two days after the charged incident. That's pretty close in time. And given all the other circumstances, that's pretty darn compelling as well. Well, it is an argument the government could have made and didn't make. They said this was a confession to the crime, and as in the 28J letter argument that we pointed out, that's impermissible, and that's using 404B evidence only. Well, I'm going to the harmless error analysis. I mean, let's say you're right that limiting instruction should have been given. The court should have done an extra 403 balancing under 404B. I question what difference it would make because it would have come in. It did come in. The only difference is it would have come in with an instruction. But together with the instruction, it was such powerful evidence of his knowledge, two days within the arrest, I don't see where the prejudice is. The prejudice exists because it was called a confession, and that tends to be the most powerful tool in a prosecution's quiver. Number two, the prejudice exists because the jury was confused about that statement and even sent a letter to the court explaining whether, trying to figure out if that was a confession or not. The court has that note in front of it. And what I'd like to do, with the court's permission, is I have about a minute 30 now if I could reserve for rebuttal, please. Yes, you may. Thank you, Your Honor. Thank you. Good morning. May it please the Court. Colin McDonald on behalf of the United States. There was no error at trial, let alone plain error, affecting the outcome of the trial. The United States, four different times pre-trial, indicated its intent to introduce this statement as direct evidence of Nekojiya's guilt. November 9th, at SER 211 and 212, they indicated its intent to offer the statement as part of the 2012 event. On January 12th, they reiterated their intent to introduce the statement as direct evidence, even calling it a confession. That's at SER 308. On January 15th, again, the United States reiterated its intent to introduce the statement as a confession. That's at ER 88. I just want to ask you a question. So was the United States aware that he had committed something like 23 or 24 similar offenses over the years? Were you aware that he had this long rap sheet on this same offense? Did you know it? Well, I think what was reflected in the record is that... You can answer that yes or no. Did you know it? The answer would be no. No. Why? Because, what, you didn't take the trouble to look it up or check his file or you were in a big hurry? So why did you offer him just a very good plea deal under the circumstances? Because you didn't know about his background. So maybe you weren't doing your job. And so then you get in there and he wants to go to trial. And then you look around and you find all these other violations that somehow you overlooked. And he goes to trial and he's then convicted on one of those overlooked violations. How do you explain that? The record shows that on September 25... I don't care what the record shows. I want to know how you explain that. Well, you weren't trial counsel, were you? I was not trial counsel. Well, that makes no difference. He's talking about the government. But I'm just, I mean, he's asking, the government had this information available to it. And yet the trial counsel, the AUSA, in charge was negotiating over a plea agreement having to do with just one charge. That's what he's asking about. How is it that you weren't aware? So, in other words, how could the situation be that you were, either you should have been aware or we question whether were you really, was the counsel really investigating all this time and just finding these things? Right. So there is two separate declarations from the AUSAs that indicate when they found these other prior incidents. That's at SER 284 through 88, where they indicate that they first learned of these incidents on September 21st. And then within the next couple days, they brought those events to the attention of defense counsel and then offered a plea. They said, we found previous events and we're prepared to add charges, but we are going to give you a final offer to plead to the original single charge. In assessing vindictiveness, is the court limited to looking only at the actual two prosecutors who made the prosecutorial decision or is there some kind of imputed knowledge to the government? Well, I think the Kent case, for instance, says in the course of preparing a case for trial, this is a direct quote, in the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he may simply come to realize that information possessed by the prosecution has a broader significance. And I think that's particularly important here, where on the one singular event, it was clear that the defense was going to be that Nekochia did not know he was smuggling an alien, when now there were previous events that demonstrated that he had done it before. So that would, as the AUSA indicated in her declaration, that adding the charges really helped to bolster the United States case. And so I think this is squarely within the realm of Kent and also Gallegos-Curiel, which basically says that where a prosecutor learns of additional information, that he has the right, if not the duty, to increase charges. And then certainly a plea offer was made. And in Kent, as a matter of law, the filing of additional charges to make good on a plea bargaining threat, as occurred here, will not establish the requisite punitive motive. So the United States would say that, one, that the increased charges were a result of investigation, not any punitive motive, and two, that it was in the pretrial plea bargaining process. And the case law is clear. There's no vindictiveness. Let me ask you this question. I mean, isn't it common when prosecutors offer a plea deal and the defendant or his counsel turn it down, that the defendant and his counsel, in many instances, are aware or have been told that this is our plea deal. You take it. If you don't take it, we're going to come back with more counts. That happens frequently, doesn't it? Correct. Yeah. Well, this is kind of in that same area, isn't it? It is. Yeah. So, and that's a terrible tool that the prosecutors have. If you don't follow me, I'm going to add charges, because ultimately the sentence is going to depend, in large part, on what's charged. Right? The prosecutor's got control of all that. Whether you're going to get a big sentence, whether you're going to get a lesser sentence. If you don't cooperate, we're going to add on. And we're telling you right now. I understand the court's concerns on that. And then ultimately, in the end, the district judge here found that there was no vindictiveness and made a finding that there was no actual vindictiveness, which is not a claim that is contested on appeal. Was he sentenced based on the charges of which either the government did not end up pursuing or on the one that was hung by the jury? That's correct. So that ultimately was dismissed, that particular charge. Did the district court judge take those charges or incidences into account in sentencing? It's not clear to me whether that happened. I'm not sure of that. I know that the PSR recounts the prior incidences of smuggling as relevant conduct, but I'm not sure of that particular count. With regard to the 404B evidence, everyone at trial treated it as direct evidence. That includes the defense counsel. I thought they brought a motion to eliminate based on 404B. So the defense counsel did. The United States consistently treated it as direct evidence. Four different times the prosecutor indicated that this was direct evidence pretrial. The defense brought a 404B motion seeking to exclude it. And the court said SCR 137. He's not admitting he did it before. He's referring back probably to what's the same incident, SCR 137. Further, the district court said it may very well be that the incident that he's referring to 10 days ago was actually 12 days ago. That's SCR 136. The court also noted that the statements were really two. One was a general admission to smuggling, I smuggle aliens. And another was specific to an event. The court said the statement's not specific to an event. He said I'm working for George smuggling aliens. That's at SCR 141. And yet the district court made some reference to 404B and indicated a willingness to give a limited instruction. If asked, I mean, it's a little unclear whether the judge ultimately went on a 404B analysis or a confession analysis or both. Yeah, it was a little bit unclear. He was certainly entertaining the hypothetical 404B motion brought by defense and said I and quickly rejected the 404B position from the defense as they concede was right. They concede that it was properly admitted under 404B. But at trial, it was clear everyone was treating it as direct evidence. The prosecutor treated it that way. The district court did not give a limited instruction. And in its Rule 29 analysis referenced the admission 10 days later when denying the Rule 29 motion. That's at SCR 349. And defense counsel gave the clearest argument in all of trial that this was direct evidence. In his closing, the defense said that statement can't refer to this event because 10 days before is not 12 days before and a denali is not an accord. He was treating it as direct evidence. And he says our rebuttal evidence, our rebuttal close said it was a confession. The record never says, the prosecutor never referred to this as a confession. In closing, the prosecutor referred to it as going to the knowledge of the defendant, which is the precise 404B reason that the defense admits was appropriate. In rebuttal, they just said two days off. Two days off? What is that? That doesn't mean much. I don't really even know what that rebuttal argument meant. It could have just referred back to the knowledge argument. All right, counsel. You're well over your time. Thank you. I'd like to just say one thing. Mr. McDonald, you're McDonald, aren't you? Yes. Oh, okay. I want to make sure I got the right guy this time. I want to commend you on your candor, your openness, and your honesty with the court. Thank you, Your Honor. I appreciate it. If you want me, I'll put it in writing. No, no, no. You don't want to do that. I concur with that advice. You're impressive in your candor and your openness with the court. That's the way I feel about it. Thank you, Your Honor. I appreciate it. Thank you. All right. Thank you. Maybe you'll be U.S. Attorney someday. That's high praise from Judge Praverson of the government. Thank you. I will keep this obviously very short. Your Honor, first, as to the medictiveness, the government argues, again, that the trial prosecutor did not know until September. I think their argument is that, well, it was in the pretrial services report from the prior offense. It was in the magistrate information sheet at Mr. Nekachaya's arraignment in 2015. It was in the discovery we gave, but, oops, we didn't discover it until September. She said she had the information previously, but she forgot about it, and then she remembered it or something like that in her declaration. You know, well. I know, but why would they not include it in the plea deal as a charge if they were aware that they had? I mean, it's no excuse. Right. Two, does it make a difference legally? I mean, even if you assume that a prosecutor had evidence, they knew about it, kind of kept it in their hip pocket, but there is a back-and-forth process in plea bargaining, and they whip it out towards the end to get a little extra leverage. Under Goodwin, Kent, Borden, Kircher, and all those cases, is there a problem? Is there a constitutional problem if a prosecutor does that? Yes, Your Honor. And what case stands for that proposition? I'm sorry. I can't tell you that. I'd have to write a 28-J letter on it. But this is the problem, is that the government never made that offer until after he said, I'm not going to plead to this count, this 2015 count, and, in fact, the government couldn't convict him of that. Wait. The June count. Right. Okay. And all the other counts obviously did not make prosecution criteria to be prosecuted. They didn't collect and save evidence on them. They were ‑‑ he was let ‑‑ there were contacts. He was arrested, but then they didn't prosecute on all of those other ones. Yeah. Whether it was an arrest or a stop, yeah, I concede that point. Okay. As to the 404B, we absolutely dispute that the government ever said they were going to use this. But going back to the first point, your position then is that plea negotiations ended for purposes of indicative prosecution analysis once he said no to the first round, even though the government tried to reopen it and gave him time and counsel said, well, let me talk with my client. I mean, you say that it was still closed at that point? It was closed. Because he did not want to plead to the count that he wasn't convicted of. Yes. But why couldn't the government ask him to reconsider in light of these additional charges? Because they knew about all of those beforehand. And it never made that part of the ‑‑ So if they had brought it up before he said no, it would not be indicative prosecution. It's the fact that they brought it up after he said no? I believe ‑‑ That's the difference? I think that is the difference. Does it aid your argument that maybe they didn't have enough resources ever to have prosecuted those cases? I would not concede that they didn't have the resources to prosecute. Not resources, but they didn't have the prosecutorial level of practice. Oh, I see. Right. I think that's a fair statement that might undercut our argument, but I don't think at the end it matters because if they had decided that this is enough to prosecute with, in fact, in some respects it may actually help our argument in that ‑‑ That's what I'm suggesting. If it's so weak, we're not even going to charge it except to harass you. Yes. I can see that. And I see I'm well over and I apologize and I will submit. All right. I thank both counsel. Thank you very much. Excellent argument. And this case is submitted and we will take up United States v. Alvarez.
judges: Pregerson, Wardlaw, Chen